**STATE of Tennessee, Petitioner,**

v.

**G. W. WILLIAMS, Respondent.**

Supreme Court of Tennessee.

Nov. 10, 1975.

R. A. Ashley, Jr., Atty. Gen., Robert H. Roberts, Advocate Gen., Nashville, for petitioner.

Hughie Ragan, Jackson, for respondent.

OPINION

FONES, Chief Justice.

Williams' post-conviction petition alleges that a violation of his constitutional rights occurred when his court appointed attorney (1) failed to petition the Supreme Court for certiorari when his conviction of a felony and twenty (20) year and a day sentence was affirmed by the Court of Criminal Appeals on November 6, 1973, and (2) failed to advise him of his "right of appeal" and of counsel's intention not to pursue further review.

The State's answer to the post conviction petition denied all material allegations, but, without an evidentiary hearing the trial judge entered a decree dismissing the petition as lacking merit.

While no factual determination was made in the trial court on the issue of whether or not Williams was advised of the last avenue of review or of counsel's intention, said issues are not material unless we modify *Hutchins v. State*, 504 S.W.2d 758 (Tenn. 1974). The record clearly reflects that no certiorari petition was filed in Williams' case, lawyer assisted or pro se.

The Court of Criminal Appeals rejected the State's contention that the United States Supreme Court has in effect overruled *Hutchins* by its decision in *Ross v. Moffit*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). We granted the State's petition for the writ of certiorari to consider the same issue.

## I.

In *Hutchins* court appointed counsel abandoned his indigent client after the intermediate appellate court sustained his conviction without notice or advice of any kind.

> "Under the facts in this case, the defendant's rights were violated at that stage of the proceedings at which his court-appointed attorney should have advised him of his additional avenues of appeal, and of the action the lawyer planned to take in the case. . . . Under these facts, the defendant was completely cut off from further appeal. Because of his attorney's action he was even denied the opportunity to file a pro se petition for certiorari before the statutory ninety days expired for filing the petition. His deprivation was just as complete as if he were required to pay for that which he could not afford, such as a filing fee or a transcript." (citations omitted). 504 S.W.2d at 762.

Under the factual situation presented in *Hutchins* the deprivation of a constitutional right was clear and it was unnecessary to hold that in every case the State is compelled to provide indigent counsel to petition for certiorari. Nevertheless, it is also clear that the opinion in *Hutchins* mandates a lawyer prepared petition for certiorari to this Court.

*Ross v. Moffit, supra*, does not involve the factual situation of an indigent abandoned under circumstances that deny the opportunity to file a pro se petition in the court of last resort. In fact, one of the reasons for not mandating lawyer prepared petitions is the finding that a pro se request for review provides an adequate basis of meaningful access to the North Carolina Supreme Court.

The essence of *Ross v. Moffit, supra*, is found in the two quotes that follow:

> "The facts show that respondent, in connection with his Mecklenburg County conviction, received the benefit of counsel in examining the record of his trial and in preparing an appellate brief on his behalf for the state Court of Appeals. Thus, prior to his seeking discretionary review in the State Supreme Court, his claims '[had] once been presented by a lawyer and passed upon by an appellate court.' *Douglas v. California, supra*, 372 U.S., at 356, 83 S.Ct., at 816. We do not believe that it can be said, therefore, that a defendant in respondent's circumstances is denied meaningful access to the North Carolina Supreme Court simply because the State does not appoint counsel to aid him in seeking review in that court. At that stage he will have, at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case. These materials, supplemented by whatever submission respondent may make *pro se*, would appear to provide the Supreme Court of North Carolina with an adequate basis on which to base its deci-

sion to grant or deny review." 94 S.Ct. at 2446.

\* \* \* \* \* \*

"The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process. We think respondent was given that opportunity under the existing North Carolina system." 94 S.Ct. at 2447.

The opinion also considers in detail the standards established by the North Carolina Legislature for review by the Supreme Court of that state upon petition for certiorari. No legislative standard governs our certiorari review. But, we do not regard the distinctions between North Carolina and Tennessee's scope of review on certiorari as having any significance in the consideration of the question before us. The significant similarity is that an indigent's pro se petition in Tennessee presents to this Court a transcript of trial proceedings, a lawyer prepared brief in the Court of Criminal Appeals, and in all cases, an opinion of the Court of Criminal Appeals. Review at that stage, by this Court, is a meaningful search for errors prejudicial to a defendant.

■ *Ross v. Moffit, supra,* clearly establishes that the Federal Constitution does not mandate that a state provide counsel for an indigent defendant to pursue second tier discretionary appeals.

The rationale of *Hutchins* rests on (1) the policy in the Federal System as expressed in the Criminal Justice Act and *Doherty v. United States,* 404 U.S. 28, 92 S.Ct. 175, 30 L.Ed.2d 149 (1971); (2) the similarity of key expressions of T.C.A. § 40–2018 and 18

U.S.C. § 3006A(c)[1]; and (3) the implicit expectation that the United States Supreme Court would require that the states track the federal system by mandating lawyer prepared certiorari petitions for indigent defendants at the second tier discretionary level.

Since this Court's decision in *Hutchins* there has been a significant increase in appeals that are in the ultimate category of useless advocacy, the completely frivolous appeal.

■ It is unethical for a lawyer to take a frivolous legal position in the courts of this State. Code of Professional Responsibility, Canon 7, Paragraph EC 7–4 and 7–5.

We take judicial notice that some indigent defendants have pursued six (6) or more post-conviction petitions, initiated pro se but thereafter mandatorily pursued to this Court, with state paid lawyer assistance because of the requirements of the post-conviction statutes and T.C.A. § 40–2018.

We abhor any law that forces a member of the bar to involuntarily commit a breach of ethics. Neither the Constitutions of our State or Nation nor the pursuit of equal justice under the law requires that taxpayers bear the expense of lawyer prepared frivolous appeals, under the guise of matching the rich man's legal arsenal. The frivolous appeal of the wealthy defendant is as useless and meaningless as the frivolous appeal of the indigent.

■ Nevertheless, the policy considerations involved are for the Legislature. We cannot, in good conscience, reject the interpretation placed upon the Tennessee statute by the Court in *Hutchins.* We cannot reject its statement that the phrase "any appeal" includes appeal by certiorari petition to the Supreme Court.[2] We cannot reject a

---

1. In the Federal Act, "at every stage of the proceedings from his initial appearance before the United States magistrate or the court through appeal." The Tennessee statute, "at all stages of the proceedings before

the court which appointed him, and also upon any appeal."

2. Our research into the definition and use of the word "appeal" leads us to the inescapable conclusion that, as used in the context

statutory interpretation that is legally correct, on the ground that it was unnecessary to the decision in *Hutchins* and therefore dictum.

If this regrettable situation is to be corrected, it must be done by a legislative amendment to T.C.A. § 40–2018. The threat of United States Supreme Court mandate having been removed by *Ross v. Moffit, supra,* all that remains is the mandate of the Tennessee statute. If that mandate is removed the rights of indigent defendants can be fully protected by this Court's traditionally established procedures of certiorari review, without lawyer assistance in every case.

Lawyer assistance at this level should be state supported only when the lawyer who has appealed an indigent defendant's case to the Court of Criminal Appeals unsuccessfully, believes that there is sufficient merit in one or more assignments of error to justify a lawyer assisted certiorari petition, or upon a pro se certiorari petition, this Court finds that the issues are such that lawyer assistance in this Court will be meaningful.

▮ The judgment of the Court of Criminal Appeals is affirmed. This case is remanded to that Court for the entry of a judgment vacating the order heretofore entered and reinstating that order so as to start anew the statutory period for filing a petition for certiorari, lawyer assisted.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.

of this statute, it is unquestionably broad enough to include certiorari review. 4 C.J.S. Appeal and Error § 17, p. 90; Black's

Law Dictionary, *Tennessee Central Railroad Company v. Campbell*, 109 Tenn. 640, 75 S.W. 1012, 1013 (1903).